**[J-37-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| KLEINBARD LLC, | : | No. 101 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 204 CD |
| | : | 2022 entered on April 25, 2023 |
| v. | : | Affirming the Order of the Lancaster |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. No. CI-21- |
| THE OFFICE OF THE DISTRICT | : | 06142 entered on February 17, |
| ATTORNEY OF LANCASTER COUNTY; | : | 2022. |
| HEATHER ADAMS, IN HER OFFICIAL | : | |
| CAPACITY AS DISTRICT ATTORNEY OF | : | ARGUED:  May 14, 2024 |
| LANCASTER COUNTY; LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| JOSHUA PARSONS, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| RAY D'AGOSTINO, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| VICE-CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| CRAIG LEHMAN, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| LANCASTER COUNTY COMMISSIONER; | : | |
| BRIAN HURTER, IN HIS OFFICIAL | : | |
| CAPACITY AS LANCASTER COUNTY | : | |
| CONTROLLER; AND CHRISTINA | : | |
| HAUSNER, IN HER INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| FORMER LANCASTER COUNTY | : | |
| SOLICITOR, | : | |
| | : | |
| Appellees | : | |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  December 17, 2024**

The present dispute involves former Lancaster County District Attorney (and now Court of Common Pleas Judge) Craig Stedman. During his tenure as District Attorney, Stedman leased a Toyota Highlander SUV, which he paid for using drug forfeiture funds.[1] Under the Forfeiture Act,[2] district attorneys have the right to spend money that is subject to forfeiture under the Act so long as the funds are used "for the enforcement of or prevention of a violation of the provisions of The Controlled Substance, Drug, Device and Cosmetic Act."[3]

Stedman drove the forfeiture-funded SUV to Harrisburg many times, including to celebrate the passage of a 2017 law that introduced increased penalties for animal abuse crimes.[4] A journalist investigating Stedman's use of the vehicle obtained "parking records from the Harrisburg Parking Authority," "vehicle information from Carfax," and "Stedman's expense reports from the county controller's office," which together established that Stedman had spent over $21,000 in drug forfeiture proceeds to lease and maintain the Toyota Highlander between January 2016 and November 2018.[5] Stedman also drove

---

[1]    *See Stedman v. Lancaster Cnty. Bd. of Comm'rs*, 221 A.3d 747, 752 (Pa. Cmwlth. 2019); Carter Walker, *DA Spent $21,000 Intended for Drug Enforcement, to Lease SUV, Records Show*, LANCASTER ONLINE (Mar. 6, 2019), https://www.lancasteronline.com/news/local/da-spent-intended-for-drug-enforcement-to-lease-suv-records/article_34d90d86-3f5c-11e9-a42c-035d89dc0997.html.

[2]    42 Pa.C.S. §§ 5801-08.

[3]    42 Pa.C.S. § 5803(g).

[4]    Walker, *supra* note 1 (stating that, after the 2017 bill-signing celebration, "Lancaster County's top prosecutor hopped into a 2016 Toyota Highlander leased with money that had been designated by state law for use fighting drug crimes and drove the nearly 40 miles back home").

[5]    *Id.* ("Controller's office records show Stedman spent $21,373.32 in drug forfeiture proceeds between January 2016 and November 2018 on the lease, security deposit, registration and inspection of the vehicle. That figure includes a $10,000 initial payment, $1,950 security deposit and recurring monthly payments of nearly $300 for the Highlander, which has a sticker price of about $30,000.").

the "SUV to Harrisburg at least 16 times since the spring of 2017" to attend various events and obligations "not directly related to drug-law enforcement," such as conferences and continuing legal education courses, legislative hearings, and meetings with the Governor's staff.[6]

Before publishing his story about Stedman's SUV, the journalist sought comment from Stedman and from the Lancaster County Board of Commissioners. For his part, Stedman (through a spokesperson) claimed that the Act authorizes him to spend forfeiture funds on an automobile lease because most of the crimes that he prosecutes as District Attorney relate to drug activity in some way.[7] The spokesperson also emphasized that Stedman "directly oversees and commands the Lancaster County Drug Task Force as part of his duties each day of the week."[8] The County Board of Commissioners, in contrast, called Stedman's use of the forfeiture funds "improper" and vowed to investigate "whether this vehicle was ever used for non-County business purposes."[9]

---

[6] *Id.*

[7] *Id.* ("The district attorney's office, through its spokesman, defended the lease by pointing out it is paid for directly out of the forfeiture account and not out of the department's general fund or other taxpayer-funded account. He also stated that most of the crimes Stedman prosecutes—from DUI to domestic abuse—are related to drug activity in some way, and therefore his spending of forfeiture money on a vehicle to perform his duties is permissible under state law.").

[8] *Office Spokesman: DA Has Access to 'Work Vehicle' Because He's on Call 24/7*, LANCASTER ONLINE (Mar. 5, 2019), https://www.lancasteronline.com/news/local/stedman-spokesman-da-has-access-to-work-vehicle-because-he/article_78970d62-3f51-11e9-8142-2b09ba6a75ee.html ("[E]very single day [Stedman] supervises enforcement of all drug crimes and the vast array of numerous crimes that are related to and/or driven by drugs in the county, to include DUIs and violent crimes. It would be myopic to assume [Stedman] will have one specific task, event or duty for each day.").

[9] *County Commissioners Launch Review: Stedman 'Apparently Went Outside of the County Procurement Process,'* LANCASTER ONLINE (Mar. 5, 2019), https://www.lancasteronline.com/news/local/county-commissioners-stedman-
(continued…)

Stedman then retained Kleinbard LLC to represent him in his official capacity. With Kleinbard's assistance, Stedman sued the County's commissioners in the Commonwealth Court seeking to block them from investigating or auditing his office's use of forfeiture funds.[10] The Commonwealth Court eventually concluded that it lacked subject matter jurisdiction over Stedman's suit and transferred the matter to the Lancaster County Court of Common Pleas. By that time, however, Stedman had become a Judge-elect of that court. Four days before leaving office to assume his judgeship, Stedman submitted a voucher to the county's Controller requesting that the county pay Kleinbard $74,193.06 for work the firm had completed up to that point. Because the County Commissioners had only appropriated Stedman's office $5,000 for legal services that year, however, the voucher indicated that the payment to Kleinbard should be drawn from three distinct sources: (1) the office's $5,000 legal services budget; (2) the District Attorney's drug and alcohol rehabilitation program account; and (3) the District Attorney's bad check restitution program account. In other words, Stedman sought to pay the vast majority of Kleinbard's fee from these latter two sources, which I will call "the program accounts."[11]

---

apparently-went-outside-of-the-county-procurement/article_cacdf23e-3f52-11e9-ab60-7f2240285aab.html.

[10] Specifically, Stedman sought a declaratory judgment that the office's drug forfeiture funds are not subject to the Commissioners' contracting authority and therefore are not subject to audit or investigation by them. *See Stedman*, 221 A.3d at 753.

[11] One difficulty with this case is that we know very little about the program accounts. Kleinbard's complaint alleges that the accounts: (1) are not part of the County's general fund and do not contain taxpayer monies appropriated by the Commissioners; (2) "are funded by fees paid by participants" in the two diversionary programs; and (3) are expendable within the District Attorney's sole discretion without "any degree of discretionary review or oversight by the County Commissioners or other County officials." Majority Opinion at 5 (quoting Kleinbard's Complaint at ¶¶30, 72). As the Majority highlights, neither the parties nor the Commonwealth Court have identified a statute that governs either of the program accounts and it remains unclear at this stage whether there (continued…)

After Stedman assumed his judgeship, his successor District Attorney discontinued the suit against the Commissioners. When Kleinbard's invoice went unpaid, the firm filed a mandamus action against the County Commissioners (and the Lancaster County Solicitor, Controller, and District Attorney) seeking to compel the County to pay Stedman's legal fees. The County defendants filed preliminary objections, asserting that the Board of Commissioners controls expenditures over the District Attorney's allotted budget and that, to exceed any line item in that budget, the District Attorney must obtain authorization from the Board, which Stedman never sought. The trial court sustained the county defendants' preliminary objections, ordered the County to pay Kleinbard $5,000 only, and dismissed the rest of Kleinbard's complaint with prejudice.

On appeal, the Commonwealth Court affirmed. The panel reasoned that Stedman could not, under the County Code, unilaterally enter into a legal services contract that exceeded his office's line-item appropriation for legal fees.[12] According to the Commonwealth Court, such a contract would be void under Section 1773(b) of the County Code, which prohibits entering into contracts that "will cause the sums appropriated to be exceeded."[13] I agree with the Majority that this was error. Taking the factual allegations

---

are any restrictions on how the district attorney can spend the funds in the accounts. *Id.* at 13-14.

[12] *Kleinbard LLC v. Office of District Attorney of Lancaster Cnty.*, 2023 WL 3065855, at *4 (Pa. Cmwlth. Apr. 25, 2023) ("The fact that [Stedman] may ultimately have had an indeterminate amount of resources at his disposal does not change the fact that the engagement agreement was invalid because Stedman contracted for legal fees in an amount that exceeded his allotted legal fees budget." (footnote omitted)).

[13] *See* 16 P.S. § 1773(b) ("No work shall be hired to be done, no materials purchased, no contracts made and no order issued for the payment of any money by the county commissioners which will cause the sums appropriated to be exceeded."). As the Majority explains, Act 14 of 2024 repealed the County Code but also introduced a provision functionally identical to Subsection 1773(b). *See* 16 Pa.C.S. § 14976(b) ("The county commissioners may not do any of the following which would cause the sums appropriated (continued…)

in Kleinbard's complaint as true, Stedman's contract with the firm did not "cause the sums appropriated to be exceeded" because Stedman had access to *non-appropriated* funds (in the program accounts) that he intended to use to pay Kleinbard after he exhausted his $5,000 budget for legal services. Thus, I join the Majority opinion in full.

I write separately to state that the General Assembly should consider enacting meaningful restrictions on district attorneys' use of miscellaneous non-appropriated funds like those at issue in this case. The facts before us illustrate the need for multiple reforms. Beginning with the drug forfeiture funds that Stedman used to lease the SUV in the first place, the law states that "[c]ash or proceeds of property" that are subject to forfeiture under the Forfeiture Act may be used by a district attorney "for the enforcement of or prevention of a violation of the provisions of The Controlled Substance, Drug, Device and Cosmetic Act."[14] While that language may seem clear, some district attorneys have interpreted it quite broadly.[15] And, under current law, there is virtually no oversight of how drug forfeiture money is being spent by district attorneys.[16] It seems patently unwise to

_____

to be exceeded: (1) Hiring work to be done; (2) Purchasing materials; (3) Making a contract; (4) Issuing a payment order.").

[14]     42 Pa.C.S. § 5803(g).

[15]     My commentary here is not limited to Stedman. It appears that other district attorneys have also obtained vehicles using drug forfeiture funds. Walker, *supra* note 1 ("Berks County District Attorney John T. Adams told LNP he drives a vehicle paid for out of his county's fund, a practice he described as acceptable because he is on call around the clock and estimates that 95 percent of crime relates to drug offenses."); *id.* (quoting the then-Director of the Pennsylvania District Attorneys Association, who stated that some "district attorneys us[e] forfeiture to support vehicles for official business, such as by using proceeds to pay for the vehicles or by using the forfeited vehicle themselves").

[16]     The Forfeiture Act does require counties to annually audit all forfeited property (and proceeds therefrom) and to submit that audit to the Attorney General, who must then submit a report to the appropriations and judiciary committees of the House and Senate "specifying the forfeited property or proceeds of the forfeited property obtained" under the Act. 42 Pa.C.S. § 5803(j)-(k). The Act nevertheless gives district attorneys complete control over the purse strings when it comes to how the forfeited funds are spent.

earmark drug forfeiture funds for a specific purpose, only to then vest district attorneys with complete discretion to decide whether their desired purchase furthers that purpose. I encourage our legislators to consider amending the Forfeiture Act to include some sort of oversight mechanism to ensure that drug forfeiture money is really being used to enforce or prevent violations of our drug laws. It may also be wise to require some degree of public transparency into how district attorneys are spending drug forfeiture money.

In my view, the General Assembly should also be paying attention to the program accounts with which Stedman sought to pay Kleinbard. While I concede that the specifics of the program accounts are somewhat murky given the record before us,[17] my understanding is that the two programs in question are prosecutorial diversionary programs that allow certain matters to be resolved outside of the criminal justice system. In the case of the bad check restitution program, for example, a person who writes a bad check to a merchant can avoid criminal prosecution by participating in the program, attending a mandatory class, paying full restitution to the victim, and paying any associated program fees.[18] As the Majority details, the Drug and Alcohol Diversion Program provides similar benefits to those charged with minor drug and alcohol offenses, and it too requires participants to pay a program fee.[19]

---

[17] *See supra* note 11.

[18] *See*, *e.g.*, *Bad Check Program*, MONROE COUNTY DA, http://www.monroecountyda.com/badchecks (last visited Nov. 4, 2024) ("First time bad check offenders are given the opportunity to avoid criminal prosecution by attending a mandatory intervention class, in addition to paying restitution. All of this is accomplished without any cost to the taxpayers.").

[19] Majority Opinion at 4 n.5; *see Drug/Alcohol Diversion Program – Pathways to Recovery*, LANCASTER COUNTY, http://www.co.lancaster.pa.us/1052/DrugAlcohol-Diversion-Program (last visited Nov. 4, 2024) (stating that participants in the diversion program must pay a mandatory program fee of $100.00 upon entry).

The program fees, presumably, are intended to fund the programs. But district attorneys evidently collect more in program fees than it actually costs to administer the programs, which is why Stedman had a surplus of at least $69,193 in the two program accounts when he submitted the voucher for Kleinbard's invoice.[20] And if Kleinbard is correct that the program accounts are expendable within the District Attorney's sole discretion, then the same concerns that I expressed above regarding drug forfeiture funds apply here as well. If it is true that our law gives district attorneys—without any transparency or oversight—carte blanche to spend money that was intended to fund diversionary programs, the General Assembly should consider changing the law.

Justice McCaffery joins this concurring opinion.

---

[20] *See also Bad Check Restitution Program*, LEHIGH COUNTY, https://www.lehighcounty.org/departments/district-attorney/bad-check-restitution-program (last visited Nov. 4, 2024) ("Since the program was started in 2005, it has recovered more than $700,000 for victims of bad check offenses a*nd has generated more than $75,000 in revenue for the county*.").